# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>PAUL WELDON, STATE OF CALIFORNIA FRANCHISE TAX BOARD, THE COUNTY OF FRESNO, AND THE CITY OF FRESNO<br><br>    Defendants. | CASE NO. 1:18-cv-01318-AWI-SKO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORDER DENYING MOTION TO STRIKE**<br><br>(Doc. Nos. 55 and 66) |

## **INTRODUCTION**

Plaintiff United States filed this action on September 25, 2018, pursuant to 26 U.S.C. §§ 7401, 7403 to reduce federal tax assessments against Defendant Paul D. Weldon to judgment and to foreclose federal tax liens on residential property owned by Weldon in Fresno, California. Doc. Nos. 1, 40. The United States now brings a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on both counts. Doc. No. 55. The motion also appears to seek attorneys' fees and costs. For the reasons set forth below, the Court will grant the motion in part and deny the motion in part.

## BACKGROUND[1]

Weldon is a resident of Fresno, California. Doc. No. 55-2 ¶ 3. Weldon owns property located at 6519 West Olive Avenue, Fresno, California (the "Subject Property"). Id. ¶ 1. From about 2000 and through 2016, Weldon generated income as a medical transportation driver. Id. ¶¶ 4-5. Weldon did not file tax returns from the late 1990s until 2015. Id. ¶ 14.

Weldon never submitted Forms 1040 to the IRS for the 2000, 2002, 2003 or 2004 tax year, but the Internal Revenue Service ("IRS") received third-party informational filings known as Forms 1099 indicating that he had taxable income in each of those tax years. Doc. No. 55-2 ¶¶ 15-16. Further, Weldon confirmed or said it was likely that he did business in 2000, 2002, 2003 and 2004 with companies that submitted those filings. Id. ¶¶ 26-32. The IRS calculated Weldon's tax liabilities for 2000, 2002, 2003 and 20004 based on the filings and sent Weldon Letters 3219—also known as Statutory Notices of Deficiency—for his 2000, 2002, 2003 and 2004 income tax liabilities in 2007. Id. ¶ 17. Weldon did not take timely action in response to these notices, so the IRS assessed tax, interest and penalties for the 2000, 2002, 2003 and 2004 tax years. Id. ¶ 18.

In 2008, Weldon filed a Form 1040 for the 2007 tax year requesting a refund of $2,591,475. Doc. No. 55-2 ¶ 20. In 2015, Weldon filed a Form 1040 labeled "Corrected Return" for the 2007 tax year that reflected a tax liability of $6,688 but did not make payment. Id. The IRS adjusted Weldon's 2007 income tax liability to match his "Corrected Return" for the 2007 tax year. Id. In 2015, Weldon also filed Forms 1040 for the 2005, 2006, 2008, 2010, 2012 and 2013 tax years. Id. 55-2 ¶¶ 19, 23. The IRS's tax assessments against Weldon for the 2005, 2006, 2008, 2010, 2012 and 2013 tax years are based on the Forms 1040 that Weldon filed in 2015. Id.

Weldon has not made full payment to the United States for the assessments at issue in this case. Doc. No. 55-2 ¶ 34. As of August 31, 2020, Weldon's income tax liabilities totaled

---

[1] Unless otherwise indicated, the facts set forth in this section are undisputed and taken from the statement of undisputed facts filed by the United States in support of its motion for summary judgment, as well as the Declaration of Revenue Officer Carla Kogachi (Pseudonym) ("Revenue Officer Declaration") and exhibits thereto. Doc. Nos. 55-2, 55-3, 55-4. Weldon did not directly respond to the United States' statement of undisputed facts or file a statement of undisputed facts of his own in connection with this motion.

$767,041.19 for the 2000, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2010, 2012 and 2013 tax years. Id. ¶ 36. The IRS has recorded Notices of Federal Tax Lien ("NFTL") with the Fresno County Recorder against the Subject Property in connection with these liabilities. Id. ¶ 35.

## PLAINTIFF'S MOTION

The United States moves the Court to reduce Weldon's federal income tax assessments to judgment; to determine the order in which the United States' tax liens and interests held by other parties to this action attach to the Subject Property; and to allow the United States 90 days to seek an order of sale. Doc. No. 55 at 3;[2] Doc. No. 55-1 at 11. The United States argues that summary judgment is warranted because it has carried its burden to show that the tax assessments for the tax years in question are accurate and Weldon has failed to make a showing to the contrary.[3] See Doc. No. 55-1. Weldon disputes the accuracy of the assessments and makes a number of other arguments in opposition to the motion relating to jurisdiction, timeliness, the enforceability of tax laws and such. See Doc. No. 62.

## JURISDICTION

Weldon appears to challenge the Court's subject matter jurisdiction over this action. Doc. No. 62 at 1:18-21. The Court cannot claim to understand all aspects of Weldon's arguments with respect to jurisdiction but finds that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1340 (providing district courts with original jurisdiction over civil actions arising under federal law providing for internal revenue), 28 U.S.C. § 1345 (providing district courts with original jurisdiction over suits brought by the United States), 26 U.S.C. § 7402(a) (providing district courts with jurisdiction "to render such judgments and decrees as may be necessary or appropriate for the enforcement of internal revenue laws") and 26 U.S.C. § 7403 (allowing actions in district court to enforce tax liens).

Similarly, Weldon appears to assert, pursuant to 26 U.S.C. § 7401, that this action is not

---

[2] Unless otherwise indicated, page citations to documents on the Court's electronic docket are to the page numbers in the CM/ECF stamp at the top of each page.

[3] The motion itself also states that the United States is seeking attorneys' fees and costs. Doc. No. 55 at 4. There is no discussion of attorneys' fees or costs in the briefing provided by the United States, however, so that portion of the motion will be DENIED. See Harris v. Maricopa Cty. Superior Court, 631 F.3d 963, 971 (9th Cir. 2011) (the burden of establishing entitlement to attorneys' fees lies solely with the claimant).

3

properly before the Court because it was not commenced at the direction of the Attorney General or authorized by the Secretary of the Treasury. Doc. No. 62 at 1. The United States, however, has provided a copy of the August 18, 2017 letter from the Treasury Department authorizing this action. Doc. No. 63-1. Further, "[t]here is a presumption of regularity that attaches to the actions of public officials," and Weldon makes no showing as to why that presumption should not apply here. See United States v. Little, 2005 WL 2334705, at *3 (E.D. Cal. Sept. 23, 2005) (citing Palmer v. I.R.S., 116 F.3d 1309, 1311 (9th Cir.1997)).

The Court therefore finds that it has subject matter jurisdiction over this action.

## **LEGAL FRAMEWORK**

Pursuant to Rule 56,[4] summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); See Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1079–80 (9th Cir. 2004). The moving party bears the burden of establishing the absence of a genuine issue of material fact, generally by "citing to particular parts of materials in the record" such as depositions, interrogatory answers, declarations, and documents. Fed.R.Civ.P. 56(c); see also, Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986)). If the moving party does not meet this burden, "[s]ummary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." Henry v. Gill Indus., 983 F.2d 943, 950 (9th Cir. 1993).

If the moving party does meet this burden, the burden then shifts to the opposing party to show a genuine issue of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); see also, Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, 210 F.3d 1099, 1103 (9th Cir. 2000). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477

---

[4] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

4

U.S. 242, 248 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288–89 (1968)) (internal quotation marks omitted). If the nonmoving party does not produce enough evidence to create a genuine issue of material fact after the burden has shifted, the moving party is entitled to summary judgment. Fritz, 210 F.3d at 1103. In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita, 475 U.S. at 587 (citing Cities Service, 391 U.S. at 289).

## DISCUSSION

### I. Reducing Federal Tax Assessments to Judgment

Pursuant to 26 U.S.C. § 7402(a), district courts have the power to render judgments "as may be necessary or appropriate for the enforcement of the internal revenue laws." "In an action to collect taxes, the government bears the initial burden of proof." In re Olshan, 356 F.3d 1078, 1084 (9th Cir. 2004) (citation and internal quotation marks omitted); see also, United States v. Stonehill, 702 F.2d 1288, 1293 (9th Cir. 1983). This burden is satisfied, however, by the production of "deficiency determinations and assessments for unpaid taxes," which are presumed correct "so long as they are supported by a minimal factual foundation." In re Olshan, 356 F.3d at 1084 (citation and internal quotation marks omitted). If such assessments by the government have been issued and presented in court, the burden shifts to the taxpayer to show, by a preponderance of the evidence, "that a [deficiency] determination is arbitrary, excessive or without foundation." Id. (citing Helvering v. Taylor, 293 U.S. 507, 515–16 (1935)); Rockwell v. Comm'r, 512 F.2d 882, 885 (9th Cir.1975) (setting the evidentiary standard). Only if the taxpayer can meet this burden must the government produce additional proof to substantiate their assessments. See Keogh v. Comm'r, 713 F.2d 496, 501 (9th Cir. 1983).

Thus, the government satisfies its evidentiary burden as the party moving for summary judgment once deficiency determinations and assessments are produced. See Palmer, 116 F.3d at 1312. If the taxpayer fails to rebut the presumption that these documents are correct, the government is entitled to judgment as a matter of law. See Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).

The United States has supported its tax assessments for the tax years in question here with

5

Weldon's deposition testimony, Doc. No. 56; the Revenue Officer Declaration, Doc. No. 55-3; Forms 1040 filed by Weldon, id. ¶¶ 16-23; and various IRS records—including Account Transcripts, records from the IRS's Automated Substitute For Return ("ASFR") Unit and "INTSTD" module reports—reflecting data from Information Return Processing ("IRP") documents (such as Forms 1099) filed by third parties. Id. ¶¶ 8-10, 13, 30. Further, the United States has set forth documentary and testimonial evidence showing that it provided notice of tax deficiencies to Weldon, id. ¶¶ 14, 16, 25; that Weldon failed to take required action in response to such notices, id. ¶¶ 15, 16, 25; that the Subject Property is owned by Weldon, Doc. No. 56 at 24-25; and that liens against the Subject Property were recorded with the County of Fresno. Id. ¶¶ 26. The United States has therefore met its initial burden for reducing tax assessments against Weldon to judgment.[5]

Weldon, for his part, asserts that the assessments in question are "arbitrary, excessive and without foundation" because assessment dates and assessment amounts in NFTLs that the IRS recorded with the Fresno County Recorder "are not copasetic" with the complaint or tax return "vouchers" filed in connection with Forms 1040 in various years. Doc. No. 62 at 2-3. Weldon does not specify any supposed discrepancies among the NFTLs, tax records and pleadings in this action, however, and on reply, the United States shows: (i) that there are not any discrepancies in assessment dates and (ii) that whatever discrepancies in assessment amounts might appear to exist are attributable to the continued accrual of interest over time. Thus, Weldon fails to rebut the presumption that the IRS's tax assessments are accurate and the United States is entitled to summary judgment on the tax assessments at issue here. See United States v. Wheeler, 403 F. App'x 301 (9th Cir. 2010).

**II.     Foreclosure of Liens**

26 U.S.C. § 6321 provides:

> If any person liable to pay tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable

---

[5] Weldon asserts that the United States' motion for summary judgment is based on improper testimony by counsel for the United States. Doc. No. 62 at 13. As foregoing summary of evidence set forth by the United States demonstrates, that is simply not the case.

> penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6322, similarly, provides:

> Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

Thus, a lien is valid against a taxpayer without any further action by the United States, regardless of whether the IRS records it. See Nesovic v. United States, 71 F.3d 776, 778-79 (9th Cir. 1995) (liens arise on assessment). A lien attaches to any property a taxpayer owns at the time of a federal tax assessment, as well as any property acquired thereafter, and persists until the liability is satisfied or collection is time-barred. 26 U.S.C. § 6322; United States v. McDermott, 507 U.S. 447, 448 (1993).

Once it is established that the United States has a lien upon certain property, the United States may bring an action in district court to foreclose the lien. 26 U.S.C. § 7403; United States v. Rodgers, 461 U.S. 677, 692-94 (1983) (stating that 26 U.S.C. § 7403 grants power to a federal district court to order the sale of a delinquent taxpayer's home). The foreclosure statute requires that parties "having liens upon or claiming any interest in the property involved in such action" be named as defendants. 26 U.S.C. § 7403(b). The Court may then adjudicate the merits of any claims against the property, order a sale, and direct the distribution of the proceeds to the various claimants, in priority order. 26 U.S.C. § 7403(c); Rodgers, 461 U.S. at 693-94. Ordering foreclosure may be improper where "the property is not that of the taxpayer" or where a federal tax lien is "junior to undisputed prior liens which will exhaust the full value of the property," U.S. v. Boyd, 246 F.2d 477, 481 (5th Cir. 1957); see also, United States v. Moyer, 2008 WL 3478063, at *10 (N.D. Cal. Aug. 12, 2008), but the Supreme Court has emphasized that "the limited discretion" accorded by § 7403 not to enforce liens "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." Rodgers, 461 U.S. at 711.

Here, the United States has shown that Weldon owns the Subject Property and that tax assessments and demands were made against Weldon for the tax years in question. Further, the

1 United States has named the California Franchise Tax Board ("FTB"), the County of Fresno and
2 the City of Fresno as defendants in this action, as entities with potential interests in the Subject
3 Property. As discussed above, Weldon asserts there are irregularities involving NFTLs for the
4 Subject Property, but the United States has shown on reply that no such irregularities exist and, in
5 any event, liens attach to all property owned by a taxpayer at the time of assessment, regardless of
6 whether—or how—a lien is recorded. See Nesovic, 71 F.3d at 778-79.

7 Weldon also alleges as an affirmative defense that his "life, livelihood and Dwelling, if
8 taken by force will most certainly not yield but a small fragment of proceeds to be in a modicum
9 of the amount plaintiff claims in his complaint …." Doc. No. 45 ¶ 31. He makes no showing,
10 however, that sale of the Subject Property will not benefit the United States through the
11 diminution of his tax liabilities. See Boyd, 246 F.2d at 481. Indeed, as alleged, his affirmative
12 defense admits that sale of the Subject Property will reduce his tax liabilities to some extent. The
13 Court therefore finds that the United States is entitled to foreclose the federal tax liens at issue
14 here.

15 **III.     Weldon's Other Arguments**

16 Weldon's opposition contains (or implies) several arguments that do not involve disputes
17 of material fact and that do not correspond to affirmative defenses set forth in Weldon's Answer to
18 the First Amended Complaint. Doc. No. 45 at 3-4. The Court addresses those arguments here.

19 *Statute of Limitations*

20 Weldon asserts that collection of at least some of the tax assessments in question is time-
21 barred. Doc. No. 62 at 2. The United States argues that none of the relief sought in this action is
22 barred by the 10-year limit on collection of unpaid tax liabilities under 26 U.S.C. § 6502 because
23 the limitation period was tolled pursuant to 26 U.S.C. §§ 6331(k) and 6503(a)(1) and Treas. Reg. §
24 301.6159-1(g) between August 10, 2015, when Weldon submitted a proposed installment
25 agreement, and May 27, 2016, when the IRS rejected the proposal, providing an additional 321
26 days for the United States to bring this action. See Doc. No. 1 ¶ 19; Doc. No. 40 ¶ 20.

27 After this motion was taken under submission, Weldon filed a supplemental brief asserting
28 that he submitted the proposed installment agreement as a result of intimidation by the IRS. Doc.

8

1  No. 65 at 1. The United States denies this assertion and has brought a motion to strike Weldon's
2  supplemental brief or, in the alternative, for separate briefing on the question of whether Weldon
3  was intimated into submitting an installment agreement. Doc. No. 66. In the Court's view, neither
4  is necessary. The United States has set forth facts negating any statute of limitations defense,
5  including facts relating to submission of the proposed installment agreement that Weldon himself
6  has affirmed. Weldon's mere assertion that he submitted the installment agreement due to
7  "intimidation," with no further allegations or evidentiary fact, is not sufficient to raise a triable
8  issue, even if the Court were to give Weldon's supplemental brief the weight of a signed
9  declaration. See Larsen v. City of Willits, 85 F.3d 636 (9th Cir. 1996) (citing Hansen v. United
10 States, 7 F.3d 137, 138 (9th Cir. 1993)). Further, Weldon makes no showing as to how the fact of
11 "intimidation" is material to the operation of tolling and limitations periods. See Liberty Lobby,
12 477 U.S. at 248 (stating that "the substantive law will identify which facts are material" and that
13 "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will
14 properly preclude the entry of summary judgment").
15     The earliest tax assessment in this case was December 3, 2007. See Doc. No. 63 at 6-7.
16 Accordingly, the earliest expiration of a statute of limitations for any of the tax assessments in
17 question here was October 20, 2018 (December 3, 2017 plus 321 days). The United States filed its
18 complaint on September 25, 2018, approximately a month before that deadline. Doc. No. 1.
19 Therefore, the Court finds that none of the collections at issue here are time barred and will deny
20 the United States' motion to strike as moot.

21                                              *UCC*

22     Weldon's argument that the UCC limits or otherwise invalidates the tax liens, see Doc. No.
23 62 at 4, is without merit because federal law governing notice of federal tax liens is not controlled
24 by the UCC. United States v. Buckardt, 2020 WL 5632116, at *6 (W.D. Wash. Sept. 18, 2020),
25 reconsideration denied, 2020 WL 6262105 (W.D. Wash. Oct. 23, 2020) (citing United States v.
26 Winterburn, 749 F.2d 1283, 1286 (9th Cir. 1984) and 26 U.S.C. § 6323).

27                                           *Settlement*

28     Weldon's argument that his tax liability was settled through disclaimers written on the

back of tax payments, see Doc. No. 62 at 4, fails because the records on which the argument is based cannot be construed to show an agreement of any kind, let alone a settlement agreement as to Weldon's entire tax liability. Moreover, they plainly do not satisfy 26 U.S.C. §§ 7121 and 7122, which set forth the "exclusive means" through which a compromise or settlement of tax liability is binding on the government. See In re Szanto, 574 B.R. 862, 869 (Bankr. D. Or. 2017).

*Mandatory Nature of Tax Laws*

The Ninth Circuit has expressly held that any assertion that federal income tax laws are not mandatory, see Doc. No. 62 at 13, is frivolous. Curtis v. Commissioner, 648 F. App'x 689, 690 (9th Cir. 2016) (affirming the imposition of a penalty for taking frivolous positions regarding the constitutionality and mandatory nature of income taxes.); see also, United States v. Bell, 1997 WL 361957, at *4 (E.D. Cal. Apr. 1, 1997).

*Other Arguments*

The United States is correct that Weldon's other arguments as to while he is not liable for the taxes at issue here, see Doc. No. 62 at 7-12, are "shopworn tax defier rhetoric" that have been emphatically rejected by courts. See Butler v. Comm'r, 1995 WL 593085, at *1 (D. Mont. Sept. 29, 1995) (regulations relating to the ATF have no bearing on the IRS); United States v. Studley, 783 F.2d 934, 937 n.3 (9th Cir. 1986) (rejecting taxpayer's contention that she was not subject to federal tax laws because she was "an absolute, freeborn, and natural individual" and noted that "this argument has been consistently and thoroughly rejected by every branch of the government for decades"); Comm'r v. Glenshaw Glass Co., 348 U.S. 426, 432 n.11 (1955) (26 U.S.C. § 61(a) defines income as "all income from whatever source derived"); Alvarez v. Comm'r, 1999 WL 803155, *2 (E.D. Cal. Jul. 14, 1999) (collecting cases and rejecting numerous frivolous tax defier arguments, including the argument that only federal employees are subject to income tax).

In sum, none of the foregoing arguments has merit or otherwise affects the Court's findings that the United States is entitled to have the tax assessments at issue here reduced to judgment and to foreclose federal tax liens on the Subject Property.

## IV. Order of Enforcement of Liens

The FTB, County of Fresno and City of Fresno were named as Defendants in this action

pursuant to 26 U.S.C. § 7403(b). Doc. Nos. 1, 45.

On July 29, 2019, the Court issued a stipulated order ("July 29, 2019 Stipulated Order") stating that the City of Fresno disclaimed any interest in the Subject Property and any proceeds from the sale of the Subject Property in connection with this action. Doc. No. 43 ¶ 5. Further the July 29, 2019 Stipulated Order stated that, as a result of such disclaimer, the City of Fresno has no interest in this action and agrees to be bound by the judgment in this case. Id. ¶¶ 6, 8.

Further, on February 21, 2020, the Court issued a stipulated order ("February 21, 2020 Stipulated Order") stating that both the United States and the FTB have an interest in the Subject Property by virtue of recorded liens and setting forth the order in which such liens would be satisfied in the event the Subject Property were sold. Doc. No. 49. The February 21, 2020 Stipulated Order provides "that proceeds of sale shall be applied to satisfy any property taxes on the Subject Property, which is due and payable, before being applied to satisfy any taxes owed to the United States or the FTB." Id. ¶ 2. Further the February 21, 2020 Stipulated Order states:

> After the property taxes on the Subject Property are satisfied, the United States and FTB agree that the funds will then be applied to Mr. Weldon's outstanding income tax liabilities as follows: first, to the FTB for Mr. Weldon's total outstanding income liabilities for tax years 2000 and 2003; second, to the United States for Mr. Weldon's total outstanding income tax liabilities for tax years 2000, 2002, 2003, 2004, 2005, 2006, and 2007; third to the FTB for Mr. Weldon's total outstanding income liabilities for tax years 2007, 2008, 2009, and 2010; fourth, to the United States for Mr. Weldon's total outstanding income tax liability for tax year 2008; fifth, to the FTB for Mr. Weldon's total outstanding income liabilities for tax years 2011 and 2012; sixth, to the United States for Mr. Weldon's total outstanding income tax liabilities for tax years 2010, 2012, and 2013; and finally, if any amounts are left over after payment of all other liability and/or lienholders, the remaining funds from the sale will be sent to the FTB for Mr. Weldon's total outstanding income tax liability for tax years 2004, 2005, and 2006.

Id. ¶ 3. Finally, the February 21, 2020 Order states that the FTB and United States will "exchange current payoff information for each tax year at issue upon the sale of the Subject Property in order to file a joint proposed order of distribution" and that the FTB agrees to be bound by the judgment in this case. Id. ¶ 7.

The July 29, 2019 Stipulated Order and the February 21, 2020 Stipulated Order together govern the order in which liens and other interests held by parties to this action are to be satisfied.

# CONCLUSION

For the foregoing reasons, the Court will grant the United States' motion for summary judgment with respect to reducing federal tax assessments to judgment, foreclosing federal tax liens and establishing the order in which liens against the Subject Property are to be satisfied. The Court, however, will deny the motion for summary judgment as to attorneys' fees and costs for lack of any showing by the United States. In addition, the Court will deny the United States' motion to strike as moot.

# ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. The United States' motion for summary judgment (Doc. No. 55) is GRANTED in part and DENIED in part as follows:

   a. The United States' request for attorneys' fees and costs is DENIED;

   b. The United States' motion for summary judgment is GRANTED in all other respects;

2. Judgment shall be entered that Paul D. Weldon is indebted to the United States in the amount of $767,041.19 for unpaid individual federal income tax, interest and penalties for tax years 2000, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2010, 2012, and 2013, less any additional credits according to proof, plus interest pursuant to 26 U.S.C. §§ 6621 & 6622 and 28 U.S.C. § 1961(c)(1) and other statutory additions, as provided by law, from August 31, 2020, until the date of payment;

3. The federal tax liens arising from the assessments set forth in paragraph 17 of the First Amended Complaint (Doc. No. 40) are valid and attach to all property and rights to property of Paul D. Weldon, both real and personal, tangible and intangible, including his interest in real property located at 6519 West Olive Avenue, Fresno, California;

4. The federal tax liens of the United States upon the real property at 6519 West Olive Avenue, Fresno, California shall be foreclosed and the real property at 6519 West Olive Avenue, Fresno, California shall be sold to satisfy Paul D. Weldon's outstanding

tax liabilities;

5. The proceeds from the sale of the real property at 6519 West Olive Avenue, Fresno, California shall be distributed in accordance with the stipulated orders issued by the Court on July 19, 2019 (Doc. No. 43) and February 21, 2020 (Doc. No. 49), reflecting stipulations between and among the United States, the California Franchise Tax Board, the County of Fresno and the City of Fresno as to their respective interests in the real property at 6519 West Olive Avenue, Fresno, California;

6. The United States shall submit a proposed order of sale setting forth terms and conditions of sale consistent with this order or file a status report explaining why additional time is requested within 90 days of the date of electronic service of this order;

7. The United States' motion to strike (Doc. No. 66) is DENIED as moot;

8. The trial and pretrial conference is this action are VACATED.

IT IS SO ORDERED.

Dated:   January 22, 2021

SENIOR DISTRICT JUDGE