**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL D. WELDON, STATE OF CALIFORNIA FRANCHISE TAX BOARD, THE COUNTY OF FRESNO, AND THE CITY OF FRESNO<br><br>Defendants. | Case No. 1:18-cv-01318-JLT-SKO<br><br>ORDER DENYING MOTION TO PERMANENTLY STAY ENFORCEMENT OF COURT ORDER (Doc. 94)<br><br>ORDER OF SALE |

## I.     INTRODUCTION

The United States filed this action on September 25, 2018, pursuant to 26 U.S.C. §§ 7401, 7403 to reduce federal tax assessments against Defendant Paul D. Weldon to judgment and to foreclose federal tax liens on residential property owned by Defendant located at 6519 West Olive Avenue, Fresno, California, 93723 ("the Property"), (Docs. 1, 40), a single-family home on a lot that is more particularly described as follows:

> The East half of the Northeast Quarter of the Southwest Quarter of Section 33, Township 13 South, Range 19 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the official plat thereof, Fresno County Records.
>
> Excepting the West three-fourths thereof.
>
> Also Excepting therefrom the South half of the East half of the Northeast 1/4 of the Southwest 1/4 of Section 33, Township 13

1

> South, Range 19 East, , Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the official plat thereof, Fresno County Records.

(Doc. 93 at 2.)

On January 25, 2023, the Court granted in part and denied in part the United States' motion for summary judgment, finding that Defendant is indebted to the United States in the amount of $767,041.19 for unpaid federal income tax, interest, and penalties for tax years 2000, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2010, 2012, and 2013, less credits according to proof, plus interest and other statutory additions as provided by law. (Doc. 73 at 12.) The Court further ordered that the federal tax liens of the United States upon the Property shall be foreclosed and that the Property shall be sold to satisfy Defendant's outstanding tax liabilities. (*Id.* at 12.)[1] That ruling was affirmed by the Ninth Circuit on June 29, 2022 (Doc. 87), with the mandate entering on October 6, 2022. (Doc. 90.) The United States was ordered file a proposed order of sale as to real property belonging to Defendant. (*See* Doc. 73 at 13; Doc. 92 at 2.)

On July 28, 2023, the United States filed a proposed order of sale as to the Property. On July 28, 2023, Defendant filed a motion to "permanently stay enforcement" of the Court's prior order(s) related to the sale of the Property. (Doc. 94.) The United States opposes the motion. (Doc. 94), and Defendant filed a reply. (Doc. 96.) The Court finds the matter suitable for decision without oral argument. For the reasons set forth below, the motion for a permanent stay is **DENIED** and the **ORDER OF SALE IS ENTERED**.

///

///

///

---

[1] Additionally, the Court ordered that the proceeds from the sale of the Property shall be distributed in accordance with stipulations entered by the Court on July 19, 2019 (Doc. 43) and February 21, 2020 (Doc. 49), reflecting stipulations among the United States, the California Franchise Tax Board, the County of Fresno, and the City of Fresno, as to their respective interests in the Property. (Doc. 73 at 13.) The City of Fresno disclaimed any interest in the Property. (*See* Doc. 43.) Pursuant to those stipulations (Docs. 26, 43, 47, 49): Fresno County, California, the California Franchise Tax Board ("FTB"), the City of Fresno, California, and the United States, have agreed that after the property taxes on the Property are satisfied, the funds will then be applied to Defendant's outstanding income tax liabilities as described in paragraph 8 of the order entered herein.

## II.      MOTION FOR PERMANENT INJUNCTION AGAINST ORDER OF SALE

Defendant argues that he was born with cerebral palsy, which has limited his physical abilities, including his ability to earn a living, in numerous ways. (Doc. 94 at 1–2.) He further indicates that he "has no life options," no income, and that his Social Security will be "negligible, since any contributing job history was decades ago while much younger and short lived due to disabilities." (*Id*. at 2.) Defendant states that the Property is his primary residence and that forcing him "into homelessness and out into the environment and weather would be a deprivation of civil rights and [ ] a miscarriage of justice contributing to even more irreparable injury [and] more destruction to Human life." (*Id*.) He requests that the Court permanently stay the sale of his property and asks the Court to "grant and establish a life estate to allow defendant to finish his days in his home of decades, with the understanding that at death or incapacity causing defendant to leave[ ] the property, the property will then [ ] revert to plaintiff." (*Id*. at 3.)

Defendant does not cite to any rule of procedure in his opening motion, but the Court will construe it as one brought under Federal Rule of Civil Procedure 60.[2] Pursuant to Rule 60(b), the Court may relieve a party from a final judgement or order "for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . ., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; . . . or (6) any other reason that justifies relief." Here, the only possibly relevant provision is Rule 60(b)(6). A motion brought pursuant to Rule 60(b)(6) must be "made within a reasonable time," Fed. R. Civ. P. 60(c)(1) and the rule "is to be used sparingly as an equitable remedy to prevent manifest injustice and . . . only where extraordinary circumstances . . ." exist. *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008). Furthermore, "[a] party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation . . ." of that which was already considered by the Court in rendering its decision. *U.S. v. Westlands Water Dist*., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (internal quotation marks & citation omitted). Additionally, pursuant to this Court's Local

---

[2] Defendant appears to acknowledge the relevance of Rule 60 in his reply. (Doc. 96 at 2.)

Rules, when filing a motion for reconsideration of an order, a party must show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion." Local Rule 230(j).

As a threshold matter, the United States argues that Defendant has not brought this motion "within a reasonable time," presumably because the motion was filed more than two and a half years after the Court's summary judgment order. (Doc. 95 at 2.) This objection is somewhat disingenuous, given that the Court explicitly put off ruling on Defendant's equitable arguments until a proposed order of sale had been presented to the Court. (Doc. 81 at 2 ("The Court will therefore deny [Defendant's] motion [for a stay] without prejudice to refiling, with proper factual and legal support, when the status of the appeal is clarified and the United States has set forth a proposed order of sale.") However, because the motion will be denied on other grounds, the Court finds it unnecessary to explore further the question of timeliness.

For purposes of resolving Defendant's motion, the Court will assume the truth of the factual assertions made regarding Defendant's medical diagnosis and the challenges he faces as a result. Even so, the Court finds that the motion must be denied because it is without any basis in law. Defendant's opening brief cites the Americans with Disabilities Act generally, but the Court is unaware of any language in that statute that empowers a court to grant the relief requested. Defendant also cites 26 U.S.C. § 6334, which lists certain kinds of property that is "exempt from levy," and sets forth a procedure to obtain court approval to levy a principal residence. 26 U.S.C. § 6334(e)(1)(A). However, § 6334 governs how the IRS can levy a principal residence during an administrative proceeding; § 6334 does not apply to this judicial enforcement action brought under 26 U.S.C § 7403. *See United States v. Peters*, No. 4:12CV01395 AGF, 2014 WL 2611813, at *8 (E.D. Mo. June 11, 2014) (comparing 26 U.S.C. 6334 with § 7403 and explaining that while § 6334 allows the court to consider whether the tax liability can be satisfied by some other means, § 7403 does not; put another way "a taxpayer cannot defeat a lien enforcement action brought pursuant to [ ] § 7403 simply by contending that the United States can satisfy the tax obligations by some other means").

Under 26 U.S.C. § 7403, a district court "may decree a sale" of a property subject to a

lien of the United States. This power to order the "sale of certain properties to satisfy the tax indebtedness of delinquent taxpayers" extends to "the sale of the family home in which a delinquent taxpayer had an interest at the time he incurred his indebtedness." *United States v. Rodgers*, 461 U.S. 677, 680 (1983). As the Court's summary judgment order explained, (Doc. 73 at 7), under § 7403, this Court has "limited equitable discretion in determining whether to order the sale of property to satisfy delinquent tax liabilities." *United States v. Gibson*, 817 F.2d 1406, 1407 (9th Cir. 1987). "District courts may exercise this limited discretion in individual cases to take into account both the government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." *Id*. A district court's "limited discretion accorded by § 7403 should be exercised rigorously and sparingly." *Rodgers*, 461 U.S. at 711. Critically, the Supreme Court noted that there are "virtually no circumstances . . . in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself." *Rodgers*, 461 U.S. at 709; *see also United States v. Nichols*, No. 2:13-CV-0167-TOR, 2015 WL 7784878, at *1 (E.D. Wash. Nov. 6, 2015) (granting order of sale where there was no evidence of harm to third parties even though taxpayers argued they were in their late sixties, retired, and had health issues). Though Defendant indicates his parents helped him purchase the Property and created a living trust designed to benefit Defendant (Doc. 94), he points to no third party who will be harmed by ordering the sale of the Property. After considerable independent research, the Court has been unable to locate a single case that has stayed an order of sale under even remotely similar circumstances, and certainly not one that authorizes the Court to create a life estate benefitting Defendant in a property subject to a federal tax lien.[3]

The tax liability has already been decided, appealed, and reduced to judgment in this

---

[3] The cases cited by Defendant in reply are not on point. *Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 663 (9th Cir. 1988), generally found that foreclosure can cause harm to a parties' interest but does not suggest the relief requested here is appropriate. Other cases Defendant cited involve situations where the underlying tax liability remains disputed or subject to appeal, e,g, *Deutsche Bank Nat'l Tr. Co. as Tr. for GSAA Home Equity Tr. 2006-18 v. Cornish*, 759 F. App'x 503, 504 (7th Cir. 2019) (allowing a stay pending appeal in a dispute over the validity of a foreclosure order),

case, and Defendant has articulated no legal basis for the Court to decline to issue an order of sale. Accordingly, the United States is entitled to enforce its federal tax liens against the Subject Property under 26 U.S.C. § 7403, sell the Property, and apply the proceeds toward the federal income tax liabilities of the defendant.

### III.     ORDER OF SALE

For the reasons set forth above and elsewhere in the record, this Order of Sale is entered pursuant to the provisions of 26 U.S.C. §§ 7402 and 7403 and 28 U.S.C. §§ 2001 and 2002.

Therefore, the Court **ORDERS**:

1.     The United States Marshal for the Eastern District of California, or an Internal Revenue Service Property Appraisal and Liquidation Specialist ("PALS") is authorized and directed under 28 U.S.C. §§ 2001 and 2002 to offer for public sale and to sell the Property, free and clear of the right, title, and interest of all parties to this action and any successors in interest or transferees of those parties. The United States may choose either the U.S. Marshal or a PALS to carry out the sale under this Order of Sale and shall make the arrangements for any sale as set forth in this Order. This Order of Sale shall act as a special writ of execution and no further orders or process from the Court shall be required.

2.     The U.S. Marshal or a PALS is authorized to have free access to the Property and to take all actions necessary to preserve the Property, including, but not limited to, retaining a locksmith or other person to change or install locks or other security devices on any part thereof, until the deed to the Property is delivered to the ultimate purchaser(s).

3.     The terms and conditions of the sale shall be:

a.     Except as otherwise stated herein, the sale of the Property shall be by public auction to the highest bidder, free and clear of all liens and interests.

b.     The sale shall be subject to all laws, ordinances, and governmental regulations (including building and zoning ordinances) affecting the premises, and easements and restrictions of record, if any.

c.     The sale shall be held at the Fresno County courthouse, on the Property's

premises, by mail-in bid, or at any other place in accordance with the provisions of 28 U.S.C. §§ 2001 and 2002, at a date and time announced by the U.S. Marshal or a PALS.

d.    Notice of the sale shall be published once a week for at least four consecutive weeks before the date fixed for the sale in at least one newspaper regularly issued and of general circulation in Fresno County, California, and, at the discretion of the U.S. Marshal or a PALS, by any other notice deemed appropriate. **State or local law notice requirements for foreclosures or execution sales do not apply to this sale under federal law, and state or local law regarding redemption rights do not apply to this sale.** The notice of sale shall contain a description of the Property and shall contain the material terms and conditions of sale in this Order of Sale.

e.    The minimum bid for the Property will be set by the Internal Revenue Service. If the minimum bid is not met or exceeded, the U.S. Marshal or a PALS may, without further permission of this Court, and under the terms and conditions in this Order of Sale, hold a new public sale, if necessary, and reduce the minimum bid or sell to the highest bidder.

f.    Bidders shall be required to deposit at the time of sale with the U.S. Marshal or a PALS, a minimum of 10% of the bid, with the deposit to be made by a certified or cashier's check payable to the United States District Court for the Eastern District of California. Before being permitted to bid at the sale, bidders shall display to the U.S. Marshal or a PALS satisfactory proof of compliance with this requirement.

g.    The balance of the purchase price for the Property in excess of the deposit tendered shall be paid to the U.S. Marshal or a PALS within thirty days after the date the bid is accepted, by a certified or cashier's check payable to the United States District Court for the Eastern District of California. If

1  the successful bidder(s) fail(s) to fulfill this requirement, the deposit shall

2  be forfeited and shall be applied to cover the expenses of the sale,

3  including commissions due under 28 U.S.C. § 1921(c), with any amount

4  remaining to be applied to the federal tax liabilities of Paul D. Weldon

5  described in this Order. The Property shall be again offered for sale under

6  the terms and conditions of this Order of Sale, or in the alternative, sold to

7  the second highest bidder(s).  The United States may bid as a credit,

8  without tender of cash, up to the amount of its outstanding judgment

9  against the Paul D. Weldon for unpaid tax liabilities.

10  h.   The sale of the Property shall not be final until confirmation by this Court.

11  The U.S. Marshal or a PALS shall file a report of sale with the Court

12  within thirty days from the date of receipt of the balance of the purchase

13  price.

14  i.   Upon confirmation of the sale, the U.S. Marshal or a PALS shall promptly

15  execute and deliver a deed of judicial sale conveying the Property to the

16  purchaser(s).

17  j.   Upon confirmation of the sale, all interests in, liens against, or claims to,

18  the Property that are held or asserted by all parties to this action or any

19  successors in interest or transferees of those parties shall be discharged

20  and extinguished as to the Property.

21  k.   Upon confirmation of the sale, the purchaser(s) shall have the Fresno

22  County Recorder record the transfer of the Property upon that county's

23  register of title.

24  l.   All rights to rents of or from the Property arising after the final judgment

25  in this action and before the confirmation of the sale of the Property shall

26  constitute proceeds of the Property and such rents shall be turned over to,

27  and paid to, the PALS for deposit and distribution in the same manner as

28  the proceeds of the sale of the Property. On confirmation of the sale of the

Property, all rights to product, offspring, rents, and profits of or from the Property arising thereafter shall transfer to the successful bidder(s) and all risks of losses associated with the Property shall transfer to the successful bidder(s).

4. Until the Property is sold, Defendant Paul D. Weldon shall take all reasonable steps necessary to preserve the Property (including all buildings, improvements, fixtures, and appurtenances thereon) in their current condition including, without limitation, maintaining a fire and casualty insurance policy. Mr. Weldon shall not commit waste against the Property, nor shall he cause or permit anyone else to do so. Mr. Weldon shall not do anything that tends to reduce the value or marketability of the Property, nor shall he cause or permit anyone else to do so. He shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements or posting signs) that may directly or indirectly tend to adversely affect the value of the Property or that may tend to deter or discourage potential bidders from participating in the public sale, nor shall he cause or permit anyone else to do so. Violation of this paragraph shall be deemed a contempt of court and punishable as such.

5. All persons occupying the Property shall leave and vacate the Property permanently within 120 days of this order or prior to the date of sale, whichever is sooner, each taking with them his or her personal property (but leaving all improvements, buildings, fixtures, and appurtenances to the Property). If any person fails or refuses to leave and vacate the Property by the time specified in this Order, the U.S. Marshal's Office is authorized to take whatever action it deems appropriate to remove such person(s) from the premises. **Such action may include, but is not limited to, the use of reasonable force, and to enter and remain on the premises, including, but not limited to, the land, and any structures or vehicles thereon, for the purpose of executing this Order. The U.S. Marshal is further authorized and directed to arrest and/or evict from the premises any persons who obstruct, attempt to obstruct, or interfere or attempt to interfere in any way with the execution of this Order.** No person shall be permitted to return to the Property and/or remain thereon without the express written authorization of the U.S. Marshal and/or the Internal Revenue Service, and/or the United States

Department of Justice, or their respective representatives and/or designees. Unauthorized persons who re-enter the Property during the time this Order is in effect may be ejected by the U.S. Marshal without further order of the Court.

6.     If any person fails or refuses to remove his or her personal property from the Property by the time specified herein, the personal property remaining at the Property thereafter is deemed forfeited and abandoned, and the U.S. Marshal or a PALS is authorized to remove it and to dispose of it in any manner they see fit, including sale, in which case the proceeds of the sale are to be applied first to the expenses of sale, with the balance to be paid into the registry of the Court for further distribution.

7.     The U.S. Marshal or a PALS shall deposit the amount paid by the purchaser(s) of the Property into the registry of the Court.

8.     Upon appropriate motion for disbursement or stipulation of the parties, the Court will disburse the funds received from the sale of the Property in the following order of preference until these expenses and liens are satisfied:

a.   First, to the U.S. Marshal or a PALS (whichever conducted the sale as arranged by the United States) for the costs of the sale, including any commissions due under 28 U.S.C. § 1921(c) and any expenses for securing or maintaining the Property prior to confirmation of sale.

b.   Second, to the extent that property taxes imposed by Fresno County have become due and payable, but have not been paid, pursuant to 26 U.S.C. § 6323(b)(6), those property taxes have priority over the United States and California Franchise Tax Boards' ("FTB") interest in the Property. Once the Property is sold, the proceeds of that sale shall be applied first to satisfy any property taxes on subject property due and payable before being applied to satisfy the United States' or FBT's lien. (*See* Doc. 26, ¶ 3.)

c.   Third, to the FTB for Mr. Weldon's total outstanding income tax liabilities for tax years 2000 and 2003. (*See* Doc. 47 at ¶3.)

d.   Fourth, to the United States for Mr. Weldon's total outstanding income tax

liabilities for tax years 2000, 2002, 2003, 2004, 2005, 2006, and 2007. (*Id.*)

e. Fifth, to the FTB for Mr. Weldon's total outstanding income liabilities for tax years 2007, 2008, 2009, and 2010. (*Id.*)

f. Sixth, to the United States for Mr. Weldon's total outstanding income tax liabilities for tax year 2008. (*Id.*)

g. Seventh, to the FTB for Mr. Weldon's total outstanding income liabilities for tax years 2011 and 2012. (*Id.*)

h. Eighth, to the United States for Mr. Weldon's total outstanding income tax liabilities for 2010, 2012, and 2013. (*Id.*)

i. Ninth, if any amounts are left over after payment of all other liability and/or lienholders, the remaining funds from the sale will be sent to the FTB for Mr. Weldon's total outstanding income tax liability for tax years 2004, 2005, and 2006. (*Id.*)

j. Last, to Paul Weldon in the amount of any proceeds remaining after the first through ninth priorities, above, are paid.

IT IS SO ORDERED.

Dated:   **August 28, 2023**

UNITED STATES DISTRICT JUDGE